## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PRISCILLA A. FREIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No.: AW 08-CV-2976 |
| | ) | |
| KEYSTONE TITLE SETTLEMENT, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT KEYSTONE TITLE SETTLEMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Now comes the Defendant Keystone Title Settlement, Inc. ("Keystone") and submits this Memorandum of Points and Authorities, through undersigned counsel, in support of its Motion for Summary Judgment ("Motion"). Keystone respectfully requests, for the reasons stated more fully below, that this Court grant its Motion and enter Judgment in its favor for each of Plaintiff's claims because: (1) Title VII does not apply to this case due to the fact that Keystone had fewer than 15 employees at all times relevant to this case; (2) this Court lacks subject matter jurisdiction over Plaintiff's claim of sexual harassment because she failed to exhaust her administrative remedies; and (3) Plaintiff has failed to state a claim upon which relief can be granted for any of her claims.

### STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO GENUINE DISPUTE

### I.    Keystone had fewer than 15 employees during Plaintiff's employment.

1.      While Plaintiff was employed at Keystone, the company had only 13 employees on its payroll. See Declaration of Beckie Cole (attached hereto as Exhibit A) at ¶ 4.

2.      Plaintiff's claim that Keystone had 15 employees is not reached even by counting Mary Ann Ferguson as an employee. Plaintiff's Deposition ("Plaintiff's Dep."), relevant portions of which are

attached hereto at Exhibit B, at 38-44.  Plaintiff must also rely on counting an unpaid intern as an employee.

3.      Ms. Ferguson was an independent contractor.  Ex. A at ¶ 5.  The intern – Brianne Paugh – was unpaid.  Id. at ¶ 6.

4.      While Keystone employed Plaintiff, the company handled each of the following items on its own and did not share these functions with any other company:

(a) payroll;

(b) health insurance;

(c) life insurance;

(d) human resources department;

(e) office space;

(f) managers;

(g) personnel;

(h) equipment;

(i) storage space;

(j) uniforms;

(k) phone numbers;

(l) web site.

Ex. A  at ¶ 7.

5.      During the time that Plaintiff was employed at Keystone, Keystone did not transfer any employees to any other company and no company transferred employees to Keystone.  Keystone also did not share any policy handbook with any other company during this time.  Ex. A at ¶ 8.

6.     Keystone operated as an independent business the entire time that Plaintiff was employed there and did not jointly advertise with any other business.  Ex. A at ¶ 9.

**II.     Plaintiff failed to exhaust her administrative remedies for her sexual harassment claim.**

7.     Plaintiff filed her charge of discrimination on August 29, 2006.  See Charge of Discrimination attached hereto as Exhibit C.

8.     In her Charge, Plaintiff checked the box for National Origin Discrimination.  Id.

9.     In Paragraph III of her Charge, Plaintiff states "I believe I have been . . . discharge [sic], due to my sex, pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended."  Id.

10.     In the remainder of her charge, Plaintiff only discusses her allegations of discrimination on the basis of her National Origin and Pregnancy.  Id.

11.     Nowhere in her Charge does Plaintiff make any reference to any activity that could constitute sexual harassment.  Id.

12.     Plaintiff reviewed this document before she signed it.  Ex. B, p. 157.

13.     On or about December 22, 2006, Plaintiff's lawyer, Jay Schiffres, faxed a letter to the EEOC.  Letter from Schiffres to EEOC ("Schiffres Letter") attached hereto as Exhibit D.

14.     Plaintiff reviewed this letter and did not make any changes to it.  Ex. B, at 185-186.

15.     In footnote 1 of the Schiffres Letter, Plaintiff's lawyer states "The undersigned has notified the EEOC office of his *intention* to file reprisal complaints as well as a sexual harassment complaint in this matter." (emphasis supplied).  Ex. D, at n. 1.

16.     The remainder of the Schiffres Letter only addresses Plaintiff's claims of National Origin and Pregnancy based discrimination.  Ex. D.

17.     Plaintiff never filed any sexual harassment charge against Keystone Title. Ex. A at ¶ 28.

**III.    Keystone's Business.**

18.     Keystone was in the title settlement business assisting in the sale of residential real estate

while Plaintiff was employed there.  Ex. B at pp. 16-17.  As part of that assistance, Keystone would

prepare binders for out-of-state closings.  Ex. A at ¶ 11.

19.     In 2005, Keystone had the following number of out-of-state closings broken down by

month.

    a.  August: 44
    b.  September: 43
    c.  October: 55
    d.  November: 55
    e.  December: 75

Ex. A at ¶ 17.

20.     In 2006, Keystone had the following number of out-of-state closings broken down by

month.

    a.  January: 41
    b.  February: 36
    c.  March: 33
    d.  April: 32
    e.  May: 29
    f.  June: 20

Ex. A at ¶ 17.

21.     In June 2006, Earl Matlock announced that he would be leaving the firm and setting up a

competitor firm here in Maryland.  When Mr. Matlock left, he took Joshua Parish and six other

employees with him.  He also took a significant amount of business away from Keystone and his

contacts within the industry which would enable him to compete more effectively against Keystone.  Ex. A at ¶ 18.

**IV.     Plaintiff's Employment at Keystone.**

22.     Plaintiff applied to work at Keystone in October 2005.  Ex. B at p. 13.

23.     Plaintiff's supervisor at Keystone was Beckie Cole.  Id. at p. 15.  As such, Ms. Cole oversaw Plaintiff's day-to-day activities and oversaw her work.  Ex. A at ¶ 22.

24.     Plaintiff started work at Keystone on November 1, 2005 making $12 per hour and not receiving any benefits.  Ex. B at p. 14.  Plaintiff was hired, in part, to provide translation services for any Spanish speaking customers Keystone might acquire.  During Plaintiff's employment at Keystone, her translation services were never required.  Ex. A at ¶ 19.  Plaintiff was also required to help Ms. Cole with preparing out-of-state closing files.  Id.

25.     At first, Plaintiff made a number of mistakes in preparing the out-of-state binders. Although Plaintiff's performance improved somewhat over time, she was never better than an average employee.  Ex. A at ¶ 20.

26.     Keystone's work space was a converted house that required that a number of people sit in close proximity to each other.  Ex. A at ¶ 12.  As a consequence, Keystone required its employees to take any lengthy personal phone calls outside of the building so as to not disturb the other employees. Id.  Employees who repeatedly violated this rule were subject to discipline.

27.     Peggy Herring made personal phone calls from her desk.  As a consequence, she was disciplined by Joshua Parish and Beckie Cole.  Ex. A at ¶ 14.  Mr. Parish and Ms. Cole gave Ms. Herring a verbal warning for her violation of the rule.  As far as Ms. Cole was aware, Ms. Herring was

not Chilean and was not pregnant at the time that she was disciplined for personal phone calls in the building.  Id.

28.     Ashleigh Morris made personal calls from her office phone and cell phone in the office while employed at Keystone.  Ms. Morris also engaged in personal texting while in the office.  Ms. Cole disciplined Ms. Morris for her making personal calls and texts while inside the office.  Ex. A at ¶ 14. Ms. Cole gave Ms. Morris a verbal warning for her violation of the rule and a written warning when she violated it again.  As far as Ms. Cole was aware, Ms. Morris was neither Chilean nor pregnant at the time she was disciplined.  Id.

29.     Plaintiff also took personal phone calls in the office.  Although Plaintiff at first tried to deny the fact that her calls were personal in nature, Ms. Cole pointed out that the conversations took place in Spanish and there were no Spanish speaking clients of Keystone.  When confronted with this evidence, Plaintiff conceded that the calls were personal.  Ex. A at ¶ 13.  Plaintiff received both a verbal and a written warning for her excessive personal phone calls, her unexcused non-emergency absence, and her work errors.  Id. at ¶ 15.

30.     Plaintiff told Ms. Cole that she was pregnant in February 2006.  Thereafter, Plaintiff took a large amount of unscheduled leave for doctor's appointments not only related to her pregnancy, but also for her sick children.  Ex. A at ¶ 23.  In May 2006, Ms. Cole again met with Plaintiff to inform her that she was taking too much time off in the middle of the work day for doctor's appointments.  Ms. Cole instructed Plaintiff to make her appointments where possible either before or after the work day. Id.

31.     When Mr. Matlock left Keystone he took seven of Keystone's employees with him. Because of the sharp downturn in business, Keystone opted to not fill these positions.  Furthermore,

Keystone decided to lay off both Plaintiff and Beth Easterday because there was not enough work for them.  In Plaintiff's case, Ms. Cole could handle the diminished workload by herself.  Ex. A at ¶ 24.

32.     At the time of her layoff, Ms. Easterday was neither pregnant nor Chilean.  Ex. A at ¶ 24.

33.     Ms. Cole is the person who made the decision to lay off both Plaintiff and Ms. Easterday. Ex. A at ¶ 24.  Mr. Matlock and Mr. Parish played no role whatsoever in that decision.  Id. at ¶ 25.

34.     Plaintiff was never demoted and she never had her wages reduced while she was employed.  Ex. B at pp. 258-59.

## ARGUMENT

### I.     Summary Judgment Standard.

Summary Judgment is appropriate when the pleadings, depositions, answers to interrogatories, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A dispute as to a material fact is only genuine if there is sufficient evidence that a reasonable jury could use to find in the non-moving party's favor.  Jones v. Godfrey, 2008 U.S. Dist. LEXIS 29600 at *30 (D. Md. 2008) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).

To defeat Keystone's Motion, Plaintiff must make a showing sufficient to establish each essential element in her case.  Pleasurecraft Marine Engine Co. v. Thermo Power Corp., 272 F.3d 654, 658 (4th Cir. 2001).  Plaintiff must present admissible facts sufficient to put a material fact at issue. Stoyanov v. Winter, 2007 U.S. Dist. LEXIS 59949 at *11-12 (D. Md. 2007), aff'd Stoyanov v. Winter, 2008 U.S. App. LEXIS 4029 (4th Cir. 2008).  Plaintiff may not rely on a mere "scintilla" of evidence. Id.  Nor may Plaintiff rely on "conjecture" to defeat summary judgment.  Albero v. City of Salisbury,

422 F.Supp. 2d 549, 557 (D. Md. 2006).  Under this standard, Plaintiff cannot maintain her cause of

action and summary judgment is appropriate.

    **II.**    **Title VII does not apply to Keystone because it had fewer than 15 employees in both 2005 and 2006.**

    Title VII only applies to "employers."  Walters v. Metropolitan Educational Enterprises, Inc.,

519 U.S. 202, 204 (1997).  For purposes of the statute, an "employer" is defined as a person engaged in

interstate commerce who has "fifteen or more employees for each working day in each of twenty or

more calendar weeks in the current or preceding calendar year."  42 U.S.C. §2000e(b). At all times

relevant to this lawsuit, Keystone employed fewer than 15 employees.  As demonstrated by the affidavit

of Ms. Cole, the most employees Keystone had in 2005 and 2006 was 13.  Since 2006 is the year of the

alleged discrimination and when Plaintiff filed her Charge, Keystone was not covered by Title VII

because it did not have enough employees in the relevant time period.

    Although Plaintiff has claimed that Keystone had 15 employees while she was employed, she is

incorrect as a matter of law.  Plaintiff reaches her total of 15 employees by counting both Mary Ann

Ferguson and Brianne Paugh.  Statement of Material Facts ("Statement") at ¶ 2.  Ms. Ferguson,

however, was an independent contractor who was paid per document she reviewed and signed.  Ex. A at

¶ 5.  Ms. Ferguson had her own law practice with her husband and serviced other clients.  Id.  Keystone

did not withhold any taxes from her paycheck, did not cover her under workers' compensation and it did

not control or supervise her work.  Id.  As such, Ms. Ferguson qualifies as an independent contractor,

and she is not counted towards the 15 employee limit.  See  Francis v. Town of Brookneal, 2007 U.S.

Dist. LEXIS 36608 at *19 (W.D. Va 2007).

Similarly, Ms. Paugh does not count as an employee as she was unpaid for her work at Keystone. Statement at ¶ 2. She also only worked at Keystone for less than 20 weeks. Ex. A at ¶ 6. Therefore, even if an unpaid intern could count as an employee under Title VII, she would still not count for purposes of the Title VII minimum employee requirement as she did not work at Keystone for the required 20 weeks. 42 U.S.C. §2000e(d).

The only other way Plaintiff could reach the 15 employee threshold would be to show that Keystone was part of an integrated enterprise that had additional employees. Plaintiff is unable to do so. As this Court noted in <u>Glunt v. GES Exposition Services, Inc.</u>, 123 F.Supp.2d 847, 874 (D. Md. 2000), the elements of the integrated employer test include: (1) common management, (2) interrelationship between operations, (3) centralized control of employment and business functions, and (4) the degree of common ownership and financial control. <u>Id.</u>

As demonstrated by Ms. Cole's affidavit, the factors enumerated by this Court in <u>Glunt</u> do not lead to the conclusion that Keystone was integrated with any other employer. Specifically, while Plaintiff was employed by Keystone it:

- did not share operations or facilities with any other company;

- was solely in charge of its own operations;

- was solely in charge of its employment relations;

- made all payments to its employees as part of its own payroll;

- did not share any managers with any other company;

- maintained control over its own business functions;

- maintained its own benefit plans;

9

- made its own hiring and firing decisions;

- maintained its own bank accounts.

Ex. A at ¶¶ 7-9. Keystone operated as an independent business during Plaintiff's employment, serviced a number of different clients, and it did not jointly advertise with any other company. Id. at ¶ 9. The only factor that would weigh in favor of an integrated enterprise finding would be that Keystone became a subsidiary of DRB Enterprises during Plaintiff's employment. Id. at ¶ 7. Even so, no employees were shared between the companies, and they did not share policy handbooks. Id. at ¶ 8.

Therefore, given that the evidence demonstrates that Keystone had fewer than 15 employees at all times relevant to this lawsuit Title VII does not apply to this case and it should be dismissed.

**III.    This Court Lacks Subject Matter Jurisdiction over Plaintiff's Claim for Sexual Harassment.**

Before Plaintiff could file her suit alleging sexual harassment in violation of Title VII she was required to first file a charge with the EEOC. Jones v. Calvert Group, LTD., 551 F.3d 297, 300 (4th Cir. 2009). As the Fourth Circuit noted in Jones, "a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Id. (citation omitted). Federal courts are deprived of subject matter jurisdiction over a Title VII claim where a plaintiff fails to exhaust her administrative remedies. Id.

In the present case, Plaintiff never filed a charge of sexual harassment before the EEOC. Plaintiff states in her Charge that she is filing it based upon national origin discrimination and pregnancy discrimination. Statement at ¶ 10. Nowhere in the Charge does Plaintiff mention any facts that would put Keystone, the EEOC, or any other party on notice that she was also filing a charge based upon

10

allegations of sexual harassment.  It is true that Plaintiff alleges gender discrimination as part of her pregnancy discrimination case, but, the mere allegation of gender based discrimination is not sufficient to exhaust administrative remedies for a claim of sexual harassment.  Taylor v. Virginia Union University, 193 F.3d 219 (4th Cir. 1999) (en banc).

To make a charge of sexual harassment, the facts alleged by Plaintiff in her Charge would have to make a sufficient allegation of sexual harassment.  Id. at 239.  Yet, in her Charge, Plaintiff does not mention a single fact that would give rise to a reasonable suspicion that she was making a sexual harassment allegation.  Rather, Plaintiff focuses solely on her allegations of pregnancy and national origin based discrimination.  Statement at ¶¶ 10-11.  The fact that Plaintiff did not file a charge of sexual harassment is highlighted by the letter sent from her attorney to the EEOC in late December 2006 – nearly four months after she filed her Charge – in which he stated that he had not yet filed a sexual harassment charge but that he intended to do so in the future.  Id. at ¶ 15.  Plaintiff reviewed this letter before it was sent out.  Id. at ¶ 14. No such amended Charge was ever filed.  Id. at ¶ 17.

Because this Court lacks subject matter jurisdiction over Plaintiff's claim of sexual harassment, Keystone respectfully requests that this Court dismiss Plaintiff's claim with prejudice.

**IV.     Plaintiff Was Not Subjected To Sexual Harassment.**

Assuming Plaintiff can demonstrate that this Court has subject matter jurisdiction to hear her sexual harassment claim – and she cannot – she must demonstrate that she was subjected to either "quid pro quo" harassment or "hostile work environment" harassment.  See Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999).  Both causes of action require Plaintiff to prove that (a) she belonged to a protected group, (b) she was subjected to sexual harassment, (c) the harassment was based on her gender, and (d) the employer knew, or should have known, yet failed to take effective remedial action.  Id.  The "quid

pro quo" cause of action further requires Plaintiff to prove that her acceptance or rejection of the harassment was an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment.  Id.  The "hostile work environment" claim requires Plaintiff to show that the "harassment was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive working environment."  Id.  Plaintiff cannot make out either cause of action.

>    **A.    Plaintiff offers no evidence to support a claim of "quid pro quo" harassment.**

Plaintiff's claim of sexual harassment is based on the following alleged statements and actions of Joshua Parish, a settlement attorney who worked for Keystone[1]:

- whispering "you look hot and sexy" in her ear;

- Asking Plaintiff how many children she had and asking if she had a baby recently;

- Telling Plaintiff "All the Latinas are the same hot and they like to have sexy [sic] right Priscilla."

- Making the statement "I guess you [Plaintiff] don't have a television at home, since you are pregnant again."

- One time asking Plaintiff "Priscilla, do you have sex now that you are pregnant and do you like? I remember when my wife was pregnant and I love to have sex with her and she didn't, she was always tired."

- On two different occasions making the statement "I need a woman like Priscilla hot [sic] and that loves to have sex because she sure doesn't waist [sic] time." And, going on to say "Priscilla I am a hot man I love to have sex[.] But my wife never does she is always tired with the baby are you like that?"

- During one other occasion making the statement "Priscilla how many times do you have sex with your man now that you are pregnant?"

- On one occasion hugging Plaintiff and whispering "those fill [sic] nice (my breast)."

---

[1] There are compelling reasons to believe that few, if any, of these statements were ever made to Plaintiff not the least of which is the fact that Plaintiff does not mention any of them in her EEOC charge.  Nevertheless, for purposes of this motion only, Keystone will treat these allegations as being true.

<u>See</u> Plaintiff's Answers to Interrogatories at Response to Interrogatory No. 3 (Interrogatories attached

hereto as Exhibit E); Ex. B at pp. 220-228.  Mr. Parish was not Plaintiff's supervisor.  Ex. B at p. 15.

At no time did Plaintiff allege that she was directly propositioned for sexual favors by Mr.

Parish.  Furthermore, Plaintiff does not allege that she was promised any favor or threatened with any

detriment related to her acceptance or rejection of any sexual advances.  Because there was no request

and no threat or promise related to such a request, Plaintiff cannot make out a case of "quid pro quo"

harassment.

**B.     Plaintiff cannot make out a claim for "hostile work environment" harassment.**

Even assuming Plaintiff's allegations regarding Mr. Parish are true – and that is unlikely – the

alleged conduct does not arise to the level necessary to sustain a claim of sexual harassment.  Title VII

does not outlaw "'the ordinary tribulations of the workplace, such as the sporadic use of abusive

language, gender-related jokes, and occasional teasing'" because Title VII is not meant to be a general

civility code.  <u>Sraver v. Surgical Monitoring Services, Inc.</u>, 2006 U.S. Dist. LEXIS 55222 at *10-11 (D.

Md. 2006) (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)).

Under this standard, Mr. Parish's alleged statements may have been crude and obnoxious but

they did not make a "hostile work environment."  In <u>Sraver</u>, for example, the court granted summary

judgment to the employer for a "hostile work environment claim" despite allegations of misconduct far

worse than the allegations in this case.  Specifically, in <u>Sraver</u>, a part-owner of the company was alleged

to have asked the plaintiff on a regular basis "how's the sex life" or "did you get laid last night?"  <u>Id.</u> at

*2.  When the plaintiff asked for information about a bonus the part-owner responded "you'll get a

bonus when I get a blow job."  <u>Id.</u> at *3.  At one point during a phone call, the part-owner told the

plaintiff that he had something for her that was "about six inches long with a gold tip."  <u>Id.</u>  The plaintiff

in <u>Sraver</u> also complained that the part-owner would stare at her breasts and comment on them at least two to three times per month.  <u>Id.</u>  On one occasion, the part-owner stated "your boobs are bigger than my wife's" and informed the plaintiff that he liked big breasted women.  <u>Id.</u> at *4.  Finally, on at least four occasions the part-owner stated that "I am on a liquid diet to make my dick look bigger."  <u>Id.</u>

In sharp contrast to the situation in <u>Sraver</u>, the alleged perpetrator in this case was not a part-owner of the company, but, rather, a settlement attorney.  Furthermore, whereas the perpetrator directly requested a sexual act in <u>Sraver</u> – "you'll get a bonus when I get a blowjob" – Mr. Parish is never alleged to have requested sex from Plaintiff.  Moreover, several of Mr. Parish's most egregious statements (e.g. "I need a woman like Priscilla hot [sic] and that loves to have sex because she sure doesn't waist [sic] time") were only made on one or two occasions whereas the part-owner in <u>Sraver</u> asked the plaintiff in that case on a regular basis "did you get laid last night?"

Similarly, in <u>Ocheltree v. Scollon Productions, Inc.</u>, 308 F.3d 351 (4th Cir. 2002) the Fourth Circuit overturned a jury verdict and directed that a verdict be entered in favor of the employer on a "hostile work environment claim."  In <u>Ocheltree</u>, the plaintiff had demonstrated that men in her department had simulated oral sex and other sexual acts with a mannequin and sang a song to her with the lyrics "come to me, oh baby, come to me, your breath smells like cum to me."  <u>Id.</u> at 354.  The <u>Ocheltree</u> court held, as a matter of law, that such egregious conduct was not sufficiently severe and pervasive to allow a jury to conclude that the plaintiff had been subjected to a "hostile work environment."  <u>Id.</u> at 359.  Again, the conduct at issue in this case, i.e., periodic rude comments by Mr. Parish, pale in comparison to simulated sex with a mannequin and dirty songs.  Because Plaintiff fails to make out a claim of "hostile work environment" sexual harassment, Keystone respectfully requests that this claim be dismissed.

14

**V.      Plaintiff Was Not Subjected to Discrimination on the Basis of Her National Origin.**

Under the familiar burden shifting mechanism used by courts in discrimination cases, Plaintiff

must first make out a prima facie case of national origin discrimination.  See Baqr v. Principi, 434 F.3d

733, 742 (4th Cir. 2006).  Once Plaintiff does so, the burden shifts to Keystone to produce evidence of a

legitimate non-discriminatory reason for its action.  Id.  If Keystone meets that burden, Plaintiff must

come forward with evidence demonstrating that the offered legitimate reason was a mere pretext for

illegal discrimination.  Id.  Plaintiff cannot satisfy any of her burdens.

**A.      Plaintiff cannot make out a prima facie case of discrimination.**

To make out a prima facie case of national origin discrimination, Plaintiff must show that she

suffered an adverse employment action.  Baqr, 434 F.3d at 742.  Plaintiff admits that she was never

demoted and that she never had her salary cut.  Statement at ¶ 34.  Plaintiff complains that she received a

written warning about speaking Spanish, but that warning by itself does not constitute an adverse job

action.  See Lawrence v. Geren, 2008 U.S. Dist. LEXIS 85099 at *3 (D. Md. 2008) (denial of a bonus is

not an adverse employment action).

The only adverse job action Plaintiff suffered at Keystone was her layoff in July 2006.  Baqr,

434 at 742 (a termination constitutes an adverse job action).  To make out a prima facie case for

discrimination based upon that layoff, Plaintiff must show that her position remained open or was filled

by a similarly qualified applicant who was not Chilean.  Id.  Plaintiff cannot meet this requirement.

Plaintiff's position was eliminated in July 2006 when one of Keystone's owners started his own firm and

took most of the employees with him while Keystone suffered through the sharp downturn that hit the

real estate industry in 2006.  Statement at ¶ 31.  No one was hired to fill the position and it was not left

open.  Rather, Ms. Cole took over Plaintiff's job responsibilities for out-of-state filings after Plaintiff

was laid off.  Id.

Ms. Cole was not replacing Plaintiff because Ms. Cole was already responsible for working on

and sending out the out-of-state binders while Plaintiff was employed at Keystone. As Plaintiff admitted,

Ms. Cole was responsible for checking her work and actually sending the binders out to the clients.  Ex.

B at p. 72.  In fact, Ms. Cole was so heavily involved in the process that Plaintiff also claimed that any

mistake on the binders would be the fault of Ms. Cole and not her.  Id. at p. 73 ("It wasn't my fault

because [Ms. Cole] would have - - she would have to review them to make sure I did them right.").

Plaintiff even admitted that Ms. Cole did so much of the work that she did not know why Keystone kept

her employed.  Id. at p. 75  ("Q:  If you're saying that in your opinion Beckie Cole had to double check

every single fact that you entered because otherwise it would be her fault, why should Keystone even

have employed you?  A: I don't know.").  Because Plaintiff's job was eliminated and Plaintiff was not

replaced, she cannot make out a prima facie case of discrimination.

**B.     Keystone had a legitimate non-discriminatory reason to terminate Plaintiff.**

Even if Plaintiff could make out a prima facie case of national origin discrimination, and she

cannot, then the burden merely shifts to Keystone to demonstrate a legitimate non-discriminatory reason

for her discharge.  Noman, 2009 U.S. Dist LEXIS at *11.  "'This burden, however, is a burden of

production, not persuasion.'"  Id. (quoting Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th

Cir. 2007)).  In this case, Keystone has a legitimate non-discriminatory reason for laying off Plaintiff.

Her services were no longer needed because of the rapidly deteriorating business climate in real estate.

The real estate market collapsed in 2006 sharply reducing the need for Plaintiff's services on out-of-state

closing files.  Ex. A at ¶ 17.  Furthermore, Keystone could also expect a further decline in out-of-state

filings as it anticipated future competition from Mr. Matlock as he formed his own firm. Id. at 18. The only other reason Keystone had hired Plaintiff – to provide translation services to Spanish speaking clients – did not pan out as there was only one such client during Plaintiff's entire employment with Keystone. Ex. B at pp. 25-26. Keystone simply did not have need of Plaintiff's skills due to economic conditions and it let her go. Ex. A at ¶ 24.

## C. Plaintiff cannot show pretext.

To rebut the fact that she was laid off due to the economic downturn, Plaintiff must produce evidence that the lack of need for her services was a mere pretext for discriminating against her because she was born in Chile. Noman, 2009 U.S. Dist. LEXIS at *12-13. This Plaintiff cannot do.

### 1. There is no direct evidence of discrimination by the decisionmaker.

The unrebutted testimony is that Ms. Cole, and only Ms. Cole, made the decision to terminate Plaintiff. Ex. A. at ¶¶ 24-25. The only allegations of anti-Chilean bias Plaintiff makes against Ms. Cole are that: "Beckie Cole talked down to me in a different tone of voice than others in the office. . .", Ex. E, Response No. 5, and that she limited Plaintiff's ability to go on doctor's appointments during the workday. Id. The mere fact that a supervisor uses a different tone of voice with a particular employee – assuming it is true – is not enough to give rise to a conclusion of pretext on the part of that supervisor. Noman, 2009 U.S. Dist. LEXIS *14 (no pretext where senior manager "looked at me like [I] was nothing."). Plaintiff even admitted that she did not know if the tone of voice used by Ms. Cole was due to Plaintiff's Chilean birth or to a personality conflict. Ex. B at p. 256.

Furthermore, the claim that Ms. Cole restricted Plaintiff's visits to the doctor during the workday can only be tied to national origin discrimination through speculation. Plaintiff admits that she was always able to go to the doctor when she needed to and that the only limitation was that sometimes she

had to reschedule appointments.  Id. at pp. 238-239.  Plaintiff also admits that the only evidence that she

has that her doctor's visits were limited on account of her national origin was because she was the only

Chilean in the office.  Id. at p. 258.  There simply is no evidence beyond such speculation to impute any

anti-Chilean bias to Ms. Cole.

Plaintiff offers evidence of alleged anti-Chilean remarks uttered in her presence by Mr. Parish

and Mr. Matlock.  These two gentlemen, however, had announced their intention to leave Keystone in

June 2006, Id. at p. 49, and, according to Ms. Cole's unrebutted declaration, Mr. Parish and Mr. Matlock

played no role whatsoever over Plaintiff's termination.  Statement at ¶ 33.  Therefore, even if the two

men harbored anti-Chilean bias, that would have no effect on her termination and cannot show pretext

on the part of Keystone.  Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 286 (4th

Cir. 2004) (en banc) ("'statements by non-decisionmakers or decisionmakers unrelated to the decisional

process itself [do not] suffice to satisfy plaintiff's burden' of proving discrimination") (quoting Price

Waterhouse v. Hopkins, 490 U.S. 228, 277 (1998) (O'Connor, J. concurring)(bracket in original)).

Finally, Plaintiff's claim that she was instructed not to speak Spanish in the office in January

2006 does not serve as evidence of discriminatory animus.  The evidence appears clear that Plaintiff was

actually instructed to not take personal calls in the office.  Ex. B at p. 123 ("He [Mr. Parish] told me that

I couldn't receive any personal calls because it would disturb and distract other people around me.").

Even assuming that Plaintiff was instructed to not speak Spanish in January 2006 – and she was not –

that fact would have little bearing on the decision to terminate her nearly six months later when

Keystone's business had dried up.

Plaintiff also concedes that part of her job was to provide Spanish translation services if these

were needed.  Id. at pp. 24-25.  Yet, she now claims that she was instructed to conduct any Spanish

18

conversations outside the office.   Id. at p. 120 ("Q: what did he [Mr. Parish] say? A: Not to talk in the office in Spanish.  That was a nonspeaking Spanish office.  I had to take my calls outside.  Q: Even business calls?  A: Any call that was in Spanish.").  It hardly makes sense for an employer to hire someone to speak Spanish to customers and then instruct her to never speak Spanish in the office.  Furthermore, it is unlikely Keystone would knowingly hire someone who spoke Spanish and then harbor secret discriminatory animus towards that employee because of her language ability.

Mr. Parish appears to have merely stated in the January meeting that Keystone knew she was taking personal calls in the office because she was speaking Spanish over the phone and Keystone knew that she did not have any business related reason to be speaking Spanish.  Again, Plaintiff's own testimony corroborates the fact that any phone calls in Spanish were personal.  Id. at p. 123 ("Q: How many calls did you take in Spanish that were business-related? A: None").  Keystone, therefore, was merely enforcing its rule that personal calls should be taken outside the office building.  Keystone enforced the same rule against other, non-Chilean employees when it disciplined them for taking personal calls inside the office.  Statement at ¶¶ 27-28.

### 2.      The remainder of Plaintiff's allegations do not amount to discrimination.

Plaintiff's remaining allegations also fail to substantiate any pretext on Keystone's part.  Specifically, Plaintiff claims that she was subjected to national origin discrimination because she was not invited to a Christmas party in December 2005, she was told to limit her lunch breaks to 30 minutes, and it was her belief that the receptionist would screen out calls to her from people with Hispanic accents.  Ex. B at pp. 242-259.

Even assuming that these facts are true, they do not give rise to an inference of discrimination on the basis of Plaintiff's national origin or for any other reason.  For example, Plaintiff asserts that the

reason she knows that the Christmas Party and lunch break allegations were motivated by anti-Chilean bias was that she was the only Chilean in the office.  Ex. B at p. 243.  Such speculation cannot defeat a motion for summary judgment.

Plaintiff also claims that calls to her with Hispanic accents were screened out, but, she also admitted that – with the exception of a single phone call – every call she received from a Spanish speaking individual during her entire employment was a personal phone call.  Ex. B at p. 123 ("Q: How many calls did you take in Spanish that were business related? A: None.")  Plaintiff also admitted that the other employees had their phone calls screened:

> A:      She [the receptionist] would just call him [Mr. Parish] and say upstairs, hey, this [phone call] is for this, should I give it to them [the employee], or what should I tell them.

> Q:      Well, you have to tell me - - is she saying "them" or is she saying people's names?

> A:      "Them," should I give it to them, which it could have been the processor, me, anybody around the office and she would say what was it about.  And then if Josh [Parish] said no, then it was no.  She would just say that they were out or weren't in, and she also instructed me to do that."

Ex. B at p. 249.  In other words, according to the Plaintiff, Mr. Parish screened all of the incoming calls for every employee and would not allow calls to others besides Plaintiff.  Plaintiff admitted that she merely "assumed" that the calls to her were screened out because of the Hispanic accent.  Id. at 251.

Plaintiff was not the only person laid off in July 2006. Ms. Cole also laid off Beth Easterday, a non-Chilean, non-pregnant employee.  Statement at ¶ 31.  Keystone also had a number of vacancies that opened up when Mr. Matlock took several employees with him and the company opted to not fill those.  Statement at ¶ 31.  In other words, Plaintiff was not singled out, but merely caught up in a significant restructuring that took place in July 2006.

20

Because Plaintiff cannot demonstrate any pretext behind Keystone's legitimate non-discriminatory reason for her discharge, the Company respectfully requests that this Court grant its motion for summary judgment and dismiss Plaintiff's claims with prejudice.

## VI.     Plaintiff Was Not Subjected to Discrimination on the Basis of Her Pregnancy.

Plaintiff's final claim is that she was subjected to discrimination on the basis of her pregnancy. Plaintiff's pregnancy discrimination case follows the same burden shifting procedure as is used in her claim of national origin discrimination.  Eichelberger v. Sinclar Broadcasting Group, Inc., 2009 U.S. Dist. LEXIS 62690 at *17 (D. Md. 2009).  Plaintiff must make out a prima facie case, then Keystone articulates its legitimate non-discriminatory reason for its action, and Plaintiff is left with the burden of proving that the articulated reason was a mere pretext for discrimination.  Id.; see also DeJarnette v. Corning, Inc., 133 F.3d 293, 297 (4th Cir. 1998) (in pregnancy discrimination case plaintiff bears the ultimate burden of showing that she was subjected to intentional discrimination on the basis of her pregnancy).  Because Plaintiff cannot make out a claim of pregnancy discrimination, it should be dismissed.

## A.     Plaintiff cannot make out a prima facie case of pregnancy discrimination.

As with her claim of national origin discrimination, the only adverse job action suffered by Plaintiff was her termination.  Therefore, to make out a prima facie case of pregnancy discrimination, Plaintiff must demonstrate that "her position remained open or was filled by a similarly qualified applicant outside the protected class."  See Baqr, 434 F.3d at 742 (applying same prima facie test to claim of discharge based upon several protected categories).  As with national origin, Plaintiff cannot show that her position remained open or that she was replaced by a similarly qualified applicant.

21

Plaintiff's position was eliminated and the out-of-state filings were simply completed by Ms. Cole, the individual who also handled those filings while Plaintiff worked at Keystone.

**B.      Keystone had a legitimate non-discriminatory reason for terminating Plaintiff.**

Keystone's reason for terminating Plaintiff is the same.  There was a sharp downturn in business in 2006 and that, coupled with the departure of one of Keystone's owners, meant that there was no need for Plaintiff's services.  As noted above, Plaintiff herself conceded that she did not know why Keystone had employed her.  Ex. B at p. 75.

**C.      Plaintiff cannot establish any pretext.**

Plaintiff cannot establish any pretext to demonstrate that the real reason she was terminated was her pregnancy and not the sharp decline in Keystone's business.  Plaintiff alleges the following facts to support her pregnancy discrimination claim:

- She was not invited to a training course even though Keystone allegedly knew that she would benefit from taking the course;

- She had to lift boxes that were in her way;

- She was only allowed a 30 minute lunch break when others got an hour;

- She was told that she had to restrict her doctor's appointments both for her pregnancy and her sick son to between 8:00 and 9:00 in the morning or after 5:00 p.m.;

- After she told an official at Dan Ryan Builders that she was pregnant he gave her information about Dan Ryan's health insurance and paid maternity leave.

Ex. B at pp. 230-242.

As is the case with Plaintiff's claim of national origin discrimination, many of Plaintiff's allegations, even if true, would not support a claim of pregnancy discrimination because the link to discrimination is mere speculation.  For example, Plaintiff links the fact that she sometimes had to move

22

boxes to her pregnancy because, as Plaintiff asserts, "No, I would say, I can't move them, I'm pregnant, and they would just walk away." Ex. B at p. 236. Plaintiff – who could and did move the boxes – offers no evidence that any individual refused to help her because she was pregnant rather than they were tired, busy, or did not feel like doing her work for her.

Regarding her claim that she was not selected for a training course because of her pregnancy, Plaintiff claims that she knows that this took place on account of her pregnancy because she was told by a co-worker. Ex. B at p. 231. Such inadmissible hearsay is not sufficient evidence to defeat a motion for summary judgment. Greensboro Professional Firefighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995) (hearsay evidence is not supportive of an opposition to a summary judgment motion).

Similarly, Plaintiff links her complaint regarding a 30 minute lunch break to pregnancy discrimination solely because she was the only employee who was pregnant at the time. Plaintiff, however, at her deposition actually complained that she was not allowed to take lunch for the entire time that she was employed at Keystone. See e.g. Ex. B at p. 100 (no lunch breaks in November 2005), and at 207 ("Q: Okay. But, I thought that you never took a lunch break? A: I didn't."). Therefore, because she did not report to Keystone that she was pregnant until February 2006, Ex. B. at p. 222, the limitations on her lunch breaks which allegedly started in November 2005 cannot have been on account of her pregnancy.

As for Plaintiff's claim that she was not allowed to see a doctor because she was pregnant, it is clear from her own testimony that no such restriction was placed upon her. Keystone warned Plaintiff that she was taking too much time off of work for her doctor's visits: visits that were due both to her pregnancy and her sick children. Ex. B at p. 176. Beyond the fact that the restriction was related to her time away from the office and not her pregnancy, Plaintiff also admits that she was allowed to visit the

23

doctor, she merely had to attempt to schedule the appointments either at the beginning or the end of the work day. <u>Id.</u> at p. 238. Plaintiff also admits that she was able to reschedule appointments and that she was never unable to see a doctor when she needed to. <u>Id.</u> at p. 239. Plaintiff offers no evidence to show that this restriction was because of her pregnancy and not the amount of time she was taking away from the office or that she suffered any harm as a consequence of the restriction.

Plaintiff makes several allegations regarding Mr. Parish's comments about her pregnancy. These alleged statements, however, are not relevant to Plaintiff's termination because Mr. Parish played no role in the decision to terminate Plaintiff. <u>Hill</u>, 354 F.3d at 286. Furthermore, the comments attributed to Mr. Parish do not indicate any bias or dislike of Plaintiff because of her pregnancy but, rather, an attraction he had to her because of her condition. <u>See</u> <u>e.g.</u> Ex. B at p. 226 ("I need a woman like Priscilla.").

Plaintiff's claim that a manager at Dan Ryan informed her about health insurance and pregnancy leave policies at that company has no bearing on her claim against Keystone. Even if this statement by a non-party individual were relevant, Plaintiff's claim appears to be that she was discriminated against because, after she revealed to Mr. Yeager that she was pregnant, he informed her about Dan Ryan Builders, Inc.'s medical insurance and paid pregnancy leave. Plaintiff is unlikely to be able to cite to any authority that maintaining pregnancy-friendly policies is indicative of pregnancy discrimination.

Plaintiff also cannot overcome the fact that the other person laid off at the same time she was, Beth Easterday, was not pregnant at the time of her layoff. Statement at ¶ 32. And, Keystone opted to not fill the other positions left vacant by the departures of employees to join Mr. Matlock's new firm. <u>Id.</u> at ¶ 31.

**CONCLUSION**

For the reasons stated above, Plaintiff cannot demonstrate that Title VII applies to Keystone or that this Court has subject matter jurisdiction over her sexual harassment claim. Even if Plaintiff could make such a showing – and she cannot – she fails to demonstrate that she was subjected to a hostile work environment on account of her sex or that she was terminated due to either her national origin or her pregnancy. Plaintiff simply cannot make a prima facie case of discrimination and she cannot rebut Keystone's legitimate reason for terminating her, i.e., the sharp downturn in the real estate economy. Therefore, Keystone respectfully requests that its motion for summary judgment be granted in full and each of Plaintiff's claims be dismissed with prejudice.

Respectfully submitted,


___/s/_____
Terrence M.R. Zic, Esquire, Bar No. 08822
John M. Barr, *Pro Hac Vice*
LeClairRyan, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314
(703) 684-8007
(703) 684-8075 (facsimile)
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a true and accurate copy of the foregoing was mailed,

postage prepaid, by United States First Class Mail on this 3rd day of August, 2009 to the following:

Priscilla A. Freire
12515 Tarragon Way
Germantown, MD 20874
*Plaintiff Pro Se*


____/s/_____
Terrence M.R. Zic, Esquire