UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PRISCILLA A. FREIRE, )
)
    Plaintiff, )
)
) Civ. Action No.: AW 08-CV-2976
)
v. )
)
KEYSTONE TITLE SETTLEMENT, INC. )
)
    Defendant. )

### DECLARATION OF BECKIE COLE

Pursuant to 28 U.S.C. § 1746, I, Beckie Cole, do hereby declare and certify under penalty of perjury that the following is true and correct:

1. I am over the age of eighteen (18), believe in the obligation of an oath, and am competent to attest to the matters contained in this Declaration.

2. I am making this Declaration on the basis of my own personal knowledge.

3. I am the Office Manager for Keystone Title Settlement Services, Inc. ("Keystone"). I have held this position since May 2005.

**Keystone's Employees**

4. During the entire time that the Priscilla Freire ("Plaintiff") was employed by Keystone, the Company never had 15 or more employees. In 2005, the most employees Keystone had was 14 and that was before Plaintiff worked at the Company. In 2006, the most employees Keystone had was 13. During the time that Plaintiff was employed, Keystone had the following employees on its payroll: (1) Priscilla Freire; (2) Beckie Cole; (3) Donna Bowles; (4) Margaret Herring; (5) Robert Matlock; (6)

1



Margaret Woody; (7) Joshua Parish; (8) Earl Matlock (an owner of Keystone); (9) Mary Smith; (10) Ashleigh Morris;(11) Beth Easterday; (12) Nicole Loeser; (13) Kathy Powell.

5. Mary Ann Ferguson was an independent contractor who would sign deeds for Keystone on a periodic basis. Ms. Ferguson was a private attorney in practice with her husband. She was paid based upon the number of deeds that she signed. Ms. Ferguson also aided Keystone in a small number of settlements. She was paid a flat fee for each settlement she participated in. Keystone did not withhold any taxes or unemployment insurance payments from the amount it paid Ms. Ferguson. Keystone did not cover Ms. Ferguson under its workers' compensation policy. Ms. Ferguson was free to work for other clients and to the best of my understanding she did so on a regular basis as part of her law practice. Keystone did not exercise any control or supervision over Ms. Ferguson's work. Rather, she would come in at appointed times, sign the deeds and leave.

6. In mid-June 2006, before Plaintiff was laid off, Keystone began to use Brianne Paugh as an intern on a periodic basis. Ms. Paugh was never an employee and was never paid by Keystone. Ms. Paugh worked, at most, twice per week for up to two hours at a time. Ms. Paugh worked at Keystone for less than 20 weeks as she left to work for the new firm set up by Mr. Matlock in August 2006.

7. During Plaintiff's employment Keystone became a subsidiary of DRB Enterprises ("DRB"). During this time, Keystone Title did not share any of the following functions, benefits, or items with DRB or any other company:

    (a) payroll:

    (b) health insurance;

    (c) life insurance;

    (d) human resources department;

(e) office space;

(f) managers;

(g) personnel;

(h) equipment;

(i) storage space;

(j) uniforms;

(k) phone numbers;

(l) web site.

8. During the time that the Plaintiff worked for Keystone Title no personnel were transferred between Keystone Title and DRB or any other company. Furthermore, Keystone Title did not share any employee or other policy handbook with DRB or any other company during that time period.

9. Keystone Title has operated as an independent business entity during the entire time that Plaintiff was employed by the Company. Keystone Title, for example, did not jointly advertise with DRB or any other company.

10. Mr. Matlock was a part-owner of Keystone and he is one of the individuals included in my count of 13 employees contained in Paragraph 4 of this Declaration. Mr. Matlock did not report to any individual and he set his own work hours. Mr. Matlock also did not have any assigned duties, but, rather, chose what he would, or would not, do for Keystone.

**Keystone's Business**

11. Keystone provides title settlement services for real estate closings in Virginia, Maryland, Pennsylvania, and West Virginia. Part of these services entails preparing settlement folders to be used at

closing where the actual purchase of a property takes place. Because of the legal nature and close regulation of real estate transactions, it is imperative that the settlement folders be accurate.

12. Keystone's operations during Plaintiff's employment were located in a converted house where a number of people share office space. Because of these close quarters, Keystone maintained a policy that personal calls of any significant duration had to be taken outside the building. During Plaintiff's employment, I witnessed a number of individuals taking personal calls outside on their cell phones.

13. In the time during Plaintiff's employment, I disciplined three employees for failing to take personal calls outside. One employee was the Plaintiff. When confronted with the claim that she was making long personal phone calls inside the building Plaintiff at first denied that they were personal. When it was pointed out to her that she was speaking in Spanish in these calls and that Keystone knew she did not have any Hispanic business Plaintiff conceded that the calls were personal. Plaintiff was disciplined for making these calls. Other than a written warning, Plaintiff did not suffer any other consequences at her job for her taking personal phone calls in the office.

14. The second employee who I disciplined for making personal calls was Peggy Herring who received a verbal warning for receiving and making personal calls from her office phone and personal cell phone inside the office. The third employee was Ashleigh Morris who also received both a verbal and a written warning for making personal calls from her cell phone - - including texting - - during work hours inside the office. To the best of my knowledge, Ms. Morris and Ms. Herring were neither pregnant nor Chilean at the time that I disciplined them.

15. The only reason Plaintiff received a written warning first and the other two employees first received a verbal warning is because Plaintiff was also disciplined for other items including, but not

limited to, a series of mistakes she had made on work folders and her failure to give advance notice of a non-emergency doctor's visit. The combination of items made a written warning appropriate for Plaintiff's situation. A true and correct copy of the written warning which was made in the ordinary course of Keystone's business and kept in its business files is attached hereto as Exhibit A.

16. I did not discriminate against Plaintiff for any reason whatsoever.

17. Starting in later 2005, Keystone experienced a significant decline in its business as the real estate market began to collapse. Specifically, the number of out-of-state closings handled by Keystone was as follows:

**2005**

August: 44
September: 43
October: 55
November: 55
December: 75

**2006**

January: 41
February: 36
March: 33
April: 32
May: 29
June: 20

18. In June 2006, Mr. Matlock announced that he would be leaving Keystone to open his own title settlement business. Mr. Matlock took seven Keystone employees with him, including Joshua Parish, for his new firm. Mr. Matlock also took a significant amount of business with him as well as his contacts in the industry that would allow him to compete effectively against Keystone.

5

**Plaintiff's Employment at Keystone**

19. Plaintiff was hired by Keystone Title on or about November 1, 2005. Keystone hired Plaintiff to work on preparing out-of-state closing files under my supervision. Plaintiff also was hired to provide interpreter services for potential Spanish speaking clients. At the time, Keystone had received several calls from realtors inquiring as to whether Keystone had a bi-lingual capability. During Plaintiff's employment, Keystone had no occasion to utilize her translation skills as it did not obtain any Spanish speaking clients. Plaintiff would also fill in for the receptionist when that person was on her lunch break.

20. Plaintiff was an average employee. She initially made a number of mistakes in preparing the out-of-state files that I had to correct. Over time, Plaintiff's performance improved to an average level but she was never an outstanding employee as she did continue to make errors.

21. The hoped for increase in sales to Spanish speaking individuals did not materialize. As a consequence, Keystone had no reason to use Plaintiff's skills as an interpreter.

22. I was Plaintiff's direct supervisor. I gave Plaintiff her day-to-day work instructions and oversaw her work. I was also in charge of Human Relations for Keystone. Plaintiff never complained to me that she had been subjected to any inappropriate comments or actions by any employee or owner of Keystone. I never witnessed Plaintiff being subjected to any inappropriate actions or comments by any employee or owner of Keystone.

23. Plaintiff took an excessive amount of time off for doctor's visits related both to her children and her pregnancy. Plaintiff also took excessive lunch breaks. In May 2006, therefore, I met with Plaintiff and explained to her that she was a full-time employee and that Keystone needed her to work full time. I instructed Plaintiff to arrange doctor's visits either before or after work if possible. Plaintiff

agreed with this request. I am not aware of Plaintiff ever being unable to see a doctor because of this request.

24. When Mr. Matlock left Keystone he took 7 of the 14 employees with him. Keystone, because of the decline in business discussed above, opted to not fill any of those positions. Furthermore, I decided to lay off both Plaintiff and Beth Easterday as there was not enough work to justify keeping them on the payroll. Specifically for Plaintiff, I was able on my own to handle the out-of-state settlement files because of the sharp decline in the number of closings and the reduction in the amount of HR work that I had to do because of the departure of Mr. Matlock and so many of Keystone's employees. To the best of my knowledge, Ms. Easterday was not pregnant and she was not Chilean at the time I decided to lay her off.

25. Neither Mr. Parish nor Mr. Matlock played any role in my decision to terminate either Plaintiff or Ms. Easterday. I did not consult with either person regarding my decision.

26. Plaintiff's last day of employment with the Company was on or about August 4, 2006.

27. When I decided who would be laid off from Keystone, I informed Mr. Yeager of DRB who then wrote a letter to Plaintiff and to Ms. Easterday informing them that their positions had been eliminated.

28. As far as I am aware, Plaintiff never filed any charge of sexual harassment against Keystone.

I declare under penalty of perjury that the forgoing is true and correct. Executed on this 31st day of July, 2009.

_____
Beckie Cole

7

1/19                                                                                                                Priscilla

✓ Mistakes on binders - (15275-05) (15429-05)

✓ Phone Calls - Miami - WalMart
                    1/17 - always on phone talking in Spanish (personal)
                    1/18 - 20 min call in Spanish (personal)

✓ Notice Re Time-Off - 1/18 - asked to go to Dr. on 1/19
                              - no prior notice
                              - non-emergency

✓ Time Sheets   - Note lunch breaks & time-out of office

  Calendar      - Note all time-out in calendar
                - Must get prior permission





DR - Freire 00002