**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PRISCILLA A. FREIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No.: AW 08-CV-2976 |
| | ) | |
| KEYSTONE TITLE SETTLEMENT, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT KEYSTONE TITLE SETTLEMENT, INC.'S REPLY MEMORANDUM TO
PLAINTIFF'S OPPOSITION TO KEYSTONE'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Defendant Keystone Title Settlement, Inc. ("Keystone") and submits this Reply

Memorandum, through undersigned counsel, to Plaintiff's Opposition to Keystone's Motion for

Summary Judgment ("Plaintiff's Opposition").  Plaintiff's Opposition fails as a matter of law because

she does not offer the required affidavits or other admissible evidence necessary to oppose the pending

motion.[1]  Even if the materials Plaintiff includes with her Opposition were admissible, and they are not,

Keystone is still entitled to judgment as a matter of law on each of her claims.

**I.      Plaintiff Does Not Oppose Keystone's Motion with Affidavits or Admissible Evidence.**

Rule 56(e)(2) of the Federal Rules of Civil Procedure states that a party opposing summary

judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must –

by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for

trial."  Furthermore, any affidavit submitted by Plaintiff "must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant is competent to testify on the

---

[1] Plaintiff has filed a Second Responds [sic] to The Defendants Summary Judgment ("Second
Responds").  In this, Plaintiff raises a number of factual disputes which are not relevant to Keystone's

matters stated." Fed. R. Civ. P. 56(e)(1).  Plaintiff did not supply any affidavit or declaration to accompany her motion and, therefore, has not offered any admissible evidence for this Court to consider in ruling on Keystone's summary judgment motion.  Plaintiff's failure to offer an affidavit is all the more glaring given that (a) she was warned in Keystone's Motion that if she wished to file an opposition she had to provide an affidavit or statement under oath; (b) the clerk's office sent her the "Roseboro" notice informing her of the necessity of filing an affidavit or sworn statement; and (c) Keystone submitted a Declaration to accompany its motion thus giving Plaintiff a model to work from.

## II.     Title VII Does Not Apply to Keystone.

Plaintiff fails to refute the fact that Keystone did not have the statutorily required 15 employees while she was employed at the Company.  Without 15 employees, of course, Title VII does not apply to Keystone.  42 U.S.C. § 2000e(b).  Plaintiff focuses her attention on trying to prove that Keystone was an integrated enterprise with Dan Ryan Builders, Inc. ("Dan Ryan Builders").  Plaintiff's Opposition, pp. 1-2.  Plaintiff does not refute any of the facts in Ms. Cole's Declaration regarding how Keystone was run as a separate business. Rather, Plaintiff relies on the following scraps of information submitted as Exhibits to her Opposition:

- Exhibit C which appears to be a webpage from Keystone Title and printed on October 12, 2006.  Some unknown person has underlined the statement "the area's leading settlement companies[]" and written in hand "affiliated with Dan Ryan Builders."  Setting aside the blatant hearsay issues with this document and the handwritten notation, this document itself never mentions Dan Ryan Builders. That company's name is only added by some unknown person using unknown evidence.

- Exhibit B which appears to be an email chain between an Anna Devine and Beckie Cole in December 2005 concerning Plaintiff's role at Keystone.  Assuming that this email could be admissible had Plaintiff submitted the required Affidavit, it nevertheless fails to

---

pending motion for summary judgment.  Keystone disputes Plaintiff's allegations and will discuss the relevant portions of the Second Responds where appropriate in this brief.

demonstrate that Dan Ryan Builders and Keystone were an integrated enterprise.  What it merely shows is that Keystone responded to a customer request for contact information. As Ms. Cole states in her December 21, 2005 response that is part of Plaintiff's Exhibit B, Keystone planned to let "everyone" know about staff changes, not just Dan Ryan Builders.

- Exhibit D which Plaintiff claims is a handwritten note from an EEOC investigator that states "spoke to Debra L. she asked me to tell Respondent <u>We Do</u> have jurisdiction over this employer (keystone Title)."(sic).  This handwritten note provides a law school exam question on inadmissible hearsay.  It is a note given from an unidentified third party named "Bruce" at the EEOC to Plaintiff in which he relates alleged information from an unidentified fourth party claiming that the EEOC had jurisdiction over this matter.  Even assuming that this note was admissible - - and it is not - - there is no evidence making Debra L's determinations binding on this Court, no evidence that this person is any sort of expert on Title VII and no evidence as to what factors the mysterious Ms. L considered in reaching her determination.[2]

- Exhibit E which purports to be a web page from the LinkedIn service for Beckie Cole on which she purports to claim that she worked for Dan Ryan Builders from May 2005 until the present time.  This document is, again, inadmissible hearsay lacking any type of authentication and it cannot be used to oppose summary judgment.  Ms. Cole has already submitted sworn testimony that she was employed by Keystone as the office manager.  In her Supplemental Declaration, Ms. Cole testifies that she did fill out the profile in 2007, that she put down Dan Ryan Builders as her employer in error and that she has not used that profile since that time.  *See* Supplemental Declaration of Beckie Cole at ¶ 3.

- Exhibit H and Exhibit A which purport to be letters regarding Plaintiff's termination on letterhead from Dan Ryan Builders. Again, these letters are inadmissible as hearsay and lack authentication.  Even assuming that these were admissible, they merely show a connection between Dan Ryan Builders and Keystone, not that they were operated as an integrated enterprise.

As the Fourth Circuit held in *Johnson v. Flowers Industries, Inc.*, 814 F.2d 978 (4th Cir. 1987) when it rejected liability for a corporate parent in an age discrimination case "when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer."

---

[2] As shown on Plaintiff's Exhibit L, Keystone did raise the issue that it did not have enough employees with the EEOC and objected to its unsubstantiated conclusion that it had jurisdiction to conduct an investigation.  *See* Exhibit L at p.1 fn. 1.

*Id.* at 980.  The *Johnson* court emphasized that a parent company gets the benefit of limited liability "even if it exercised some control over the [] subsidiary."  *Id.*  Plaintiff's exhibits do not show the type of control needed to render Keystone an integrated enterprise with Dan Ryan Builders.  The lack of common control of labor relations, a key component of the integrated enterprises determination, between Keystone and Dan Ryan Builders is highlighted by the fact that Plaintiff never met Jodie Brinton, Dan Ryan Builders' Director of Human Resources, and did not even know who she was.  *See* excerpts of Plaintiff's Deposition attached hereto as Exhibit A, p. 147-148.  Another example is that the payroll for Keystone was handled for that company and not for Dan Ryan Builders while Plaintiff was employed by Keystone.  *See* Declaration of Beckie Cole at ¶ 7.

In sum, Plaintiff offers no evidence that could be used to refute the sworn statements of Ms. Cole regarding how Keystone operated as an independent business.  Plaintiff does not offer - - nor could she - - any paycheck stubs, applications, benefit statements or any other documents that would show that she was really employed by Dan Ryan Builders.  Furthermore, Plaintiff does not offer any evidence to refute the fact that it was Ms. Cole who made the decision to terminate Plaintiff's employment.  Because the overwhelming evidence demonstrates that Keystone was not an integrated enterprise with any other organization and the fact that it had fewer than 15 employees during all times relevant to this lawsuit means that it does not fall under the coverage of Title VII and Plaintiff's claims should be dismissed with prejudice.

**III.  Plaintiff Did Not Exhaust Her Administrative Remedies for Her Sexual Harassment Claim.**

As discussed more fully in Keystone's brief filed in support of its motion for summary judgment, Plaintiff did not exhaust her administrative remedies regarding her claim for sexual harassment and, therefore, this portion of her case should be dismissed.  Plaintiff merely states in her Opposition that she

4

is "sure" that such a charge was filed.  Plaintiff's Opposition, p. 2.  Plaintiff then misrepresents to this

Court the evidence she supplies to support her claim that a sexual harassment charge was filed.

Specifically, Plaintiff claims that her lawyer told her:

> He informed me that the EEOC is going to issue a right to sue letter which means that
> they claim they don't have enough information to go forward.  I will be requesting the
> entire file under the Freedom of Information act [sic].  They weren't able to speak with
> "Parrish" **regarding the sexual harassment issue.**  He could not track him down.

Plaintiff's Opposition, p. 2 (emphasis supplied).[3]  Yet, when this statement is compared to what Mr.

Schiffres actually said in his email, attached to Plaintiff's Opposition as Exhibit F, it is clear that

Plaintiff is adding language to Mr. Schiffres' email in an attempt to salvage her untimely sexual

harassment claim.  An examination of Exhibit F reveals that Mr. Schiffres stated:

> He informed me that the EEOC is going to issue a right to sue letter which means that
> they claim they don't have enough information to go forward.  I will be requesting the
> entire file under the Freedom of Information act [sic].  They weren't able to speak with
> "Parrish."  He could not track him down.

There is no mention of a sexual harassment issue or any mention of sexual harassment at all in the actual

text of the message.

In her Second Responds, Plaintiff now also claims that "EEOC had been sent several letter [sic]

to Mr. Parrish regarding my discrimination and harassment compliant and he never respond [sic] and

they could not track him down."  Second Responds, p. 4.  Plaintiff offers no source whatsoever for this

bald assertion of fact regarding the number of letters that were allegedly sent, nor does she offer a copy

of any of these alleged letters.  It is clear that Plaintiff never filed a complaint of sexual harassment

against Keystone with the EEOC and this portion of her suit should be dismissed.

---

[3] By now it almost goes without saying that this statement, even if it read the way Plaintiff wishes that it
did, is inadmissible hearsay.

**IV.     Plaintiff Does Not Make a Claim for Sexual Harassment.**

Even assuming Plaintiff had filed a timely charge with the EEOC for sexual harassment - - and she did not - - Plaintiff offers no evidence that would allow a reasonable jury to find either quid-pro-quo or a hostile work environment sexual harassment.  The only evidence Plaintiff makes regarding her environment is that "Due to all the Discrimination and Harassment that I suffered in the workplace I could not perform my job as I should have or wanted to.  It affect [sic] my job tremendously." Plaintiff's Opposition, p. 13.  Despite this blanket statement, which hardly constitutes evidence of hostile work environment, Plaintiff earlier claimed that her job performance was affected only by her pregnancy.  Plaintiff's Opposition, p. 5 ("When I was pregnant and when you are pregnant your work performance does go down due to your pregnancy.").

**V.     Plaintiff Does Not Offer Sufficient Evidence to Sustain Her Claim for Either National Origin or Pregnancy Discrimination.**

    **A.     Plaintiff does not demonstrate any adverse action other than her discharge.**

For Plaintiff to maintain her claim of discrimination she must show that she suffered an adverse job action.  *See Nichols v. Caroline County Board of Education*, 123 F. Supp.2d 320, 325-26 (D. Md. 2000) (company requiring doctor's note, discipline from superiors, inconveniencing plaintiff not an adverse job action under Title VII).  As the court noted in *Nicholas*, the focus should be on whether there has been discrimination "'in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensating.'" *Id.* at 325 (quoting *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981).  In her Opposition, however, Plaintiff provides a laundry list of complaints that clearly do not amount to an adverse job action.  Plaintiff complains, for example, that she could not take personal phone calls in Spanish in her office, Plaintiff's Opposition, p. 4, she was not

invited to a realtor Christmas party, *id.* at 5, Beckie Cole talked to her in a different tone of voice, *id.* at 6, and that Ms. Cole would shut the door in her face. *Id.* at 12.  These are not adverse job actions.

Plaintiff now claims that she "missed a few appointments" for taking her sons to the doctor. Second Responds, p. 5.  At her deposition, however, Plaintiff testified that she was always able to go to the doctor when she needed to, there were just some times that she had to reschedule appointments. Plaintiff's Deposition, pp. 238-239.[4]

In her Opposition, Plaintiff also claims that she was denied a 30 minute lunch break while she was employed at Keystone.  Plaintiff's Opposition at p. 7.  Even assuming that this alleged deprivation would count as an adverse job action, Plaintiff herself admits that it was not due to her pregnancy.  *Id.* ("All the days that I didn't have lunch was when I was pregnant and when I was not.").  Plaintiff also admits that she usually missed her lunch break "because I had a load of work doing Out of state Policies [sic] VA, PA, and MD, Out [sic] of state Binders for WV, PA, and VA and not making it less I had to answer incoming calls when the receptionist was out of the office due to day off, appointment or lunch breaks." *Id.* at 12.  Being busy at work does not constitute discrimination on the basis of National Origin, Pregnancy, or any other protected category.

Plaintiff's only evidence that she was allegedly deprived of a lunch break because of discrimination is the fact that "I was the only Hispanic and pregnant at the time of the meeting [where she alleges she was disciplined about her lunch breaks]." *Id.* at 7. The mere fact that an employee is in one protected category and the supervisor is in another, however, "is hardly proof that their actions were racially motivated." *Nichols*, 123 F. Supp.2d  at 327; *see also Fernandez v. National Security Agency*,

---

[4] Excerpts of Plaintiff's Deposition are attached as Exhibit B to Keystone's Memorandum in Support of Motion for Summary Judgment.

2006 U.S. Dist. LEXIS 60047, *20 (D. Md. 2006) (retaliation: mere knowledge that an employee is in a protected category is not sufficient evidence to counter substantial reasons for termination) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).

    **B.**    **Plaintiff does not demonstrate that she was replaced by someone outside of her protected categories.**

As discussed in Keystone's opening brief, the only possible adverse action Plaintiff can point to is her discharge in July 2007.  However, to maintain an action for discriminatory discharge she needs to show that she was replaced by someone who was outside of her protected categories.  *See e.g. Baqr v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006).  Plaintiff's Opposition does not refute the fact that Plaintiff was not replaced by anyone.[5]  Rather, as Keystone reduced itself in size to a mere five employees Beckie Cole simply assumed some of Plaintiff's duties as part of the work she was already performing.  *See* Cole Declaration, ¶ 24.

    **C.**    **Plaintiff is unable to show pretext.**

Plaintiff was fired when Keystone reduced its staff in the face of a severe downturn in the real estate market.  As shown in the payroll records submitted along with Beckie Cole's Supplemental Declaration, Keystone had 13 employees on its payroll on July 25, 2006.[6]  *See* Cole Supplemental Declaration.  Less than a month later, that number shrank to only five employees.  *Id.* at ¶ 4.

Plaintiff, in her Opposition, has been unable to show any pretext in the decision to terminate her employment.  Plaintiff, for example, does not challenge the steep decline in business or the fact that she

---

[5] The best response Plaintiff offers is in her Second Responds in which she asserts that "someone had to take my position doing [other work] because it was required to did [sic] it after a settlement closed." Second Responds, p.1.  Plaintiff's speculation does nothing to refute the fact that Keystone's workforce shrank dramatically in the two week period after she was let go and that no one was hired to replace her.
[6] Mary Ann Ferguson is on the payroll records, but she was an independent contractor.

was not the only person who had her position eliminated.  Plaintiff also does not challenge the fact that Ms. Cole was the sole decision maker in determining to let her go. Rather, she merely alleges that Ms. Cole was aware of certain alleged discriminatory comments that were made to her.

Plaintiff's attempt to show pretext is severely undercut by the Facebook Chat page she attaches to her Opposition as Exhibit M.[7]  In her Opposition, Plaintiff alleges that Ms. Herring was present whenever Mr. Matlock and Mr. Parish made anti-Hispanic comments.  Plaintiff's Opposition, Opp. p. 12.  Yet, on the Facebook Chat page, after Plaintiff provides Ms. Herring with a laundry list of alleged discrimination including the alleged comments about her being Mexican, all Ms. Herring can say is that she "remember[s] you telling me about it."  Exhibit M to Plaintiff's Opposition.

Plaintiff next attempts to establish pretext by claiming that she was terminated just "a few days" after she told Paul Yeager of Dan Ryan Builders that she was pregnant.  Plaintiff's Opposition, pp. 11-12, Second Responds, p. 4.  Plaintiff is not presenting an accurate description of her testimony.  At her deposition, Plaintiff testified that she met with Mr. Yeager at the end of June.  Plaintiff's Deposition, p. 148.  And, Plaintiff concedes that she was not informed of her termination until July 24th.  Exhibit A to Plaintiff's Opposition.  So, the period between the time she informed Mr. Yeager of her pregnancy and her termination was not the matter of days she now claims, it was approximately a month.  Furthermore, Plaintiff offers no evidence to refute the fact that it was Ms. Cole, and not Mr. Yeager, who made the decision to terminate Plaintiff's position, and Ms. Cole had been aware of her pregnancy since February 2006.  Plaintiff's Deposition, p. 230.

---

[7] This unauthenticated chat page is pure hearsay within hearsay and is not admissible.

9

Finally, Plaintiff attempts to establish pretext by claiming that Keystone has changed its explanation for terminating her.  Plaintiff claims that she was told her job was eliminated due to a reorganization and leadership change.  Plaintiff's Opposition, p. 11.  There has not been any change in explanation as that is exactly why Plaintiff's job was eliminated.  As discussed more fully in Keystone's brief, with the collapse in the real estate market and the departure of the president Earl Matlock and most of the Keystone staff to a new company, Keystone was reorganized and unnecessary jobs, such as those held by Beth Easterday and Plaintiff were eliminated.  Keystone's Memorandum, pp. 20-21.

Because Plaintiff has failed to demonstrate any pretext in Keystone's legitimate business explanation for the elimination of her position, Keystone respectfully requests that its Motion for Summary Judgment be granted and that this case be dismissed with prejudice.


Respectfully submitted,

___/s/_____
Terrence M.R. Zic, Esquire, Bar No. 08822
John M. Barr, *Pro Hac Vice*
LeClairRyan, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314
(703) 684-8007
(703) 684-8075 (facsimile)
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a true and accurate copy of the foregoing was mailed,

postage prepaid, by United States First Class Mail on this 23rd day of October, 2009 to the following:

Priscilla A. Freire
12515 Tarragon Way
Germantown, MD 20874
*Plaintiff Pro Se*


____/s/_____
Terrence M.R. Zic, Esquire

11