**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| PRISCILLA A. FREIRE, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. AW-08-2976 |
| KEYSTONE TITLE SETTLEMENT SERVICES, INC., | * |
| Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

Plaintiff Priscilla A. Freire brings this action against Defendant Keystone Title Settlement Services, Inc., asserting claims of sexual harassment and employment discrimination on the basis of national origin and pregnancy. Currently pending before the Court are Defendant Keystone Title Settlement Services, Inc.'s Motion for Summary Judgment (Docket No. 27) and Plaintiff's Motion to Compel Settlement Conference (Docket No. 45). The Court has reviewed the entire record, including the pleadings and exhibits, with respect to the instant motion. The issues have been briefed, and no hearing is deemed necessary. *See* Local Rule 105(6) (D. Md. 2008). For the reasons stated more fully below, the Court will GRANT Defendant's Motion for Summary Judgment and DENY Plaintiff's Motion to Compel Settlement.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Priscilla A. Freire ("Freire"), a female of Chilean national origin, worked at Keystone Title Settlement Services, Inc. ("Keystone") from November 1, 2005, through August 2006. During Freire's employment, Keystone provided title settlement services for real estate closings in Virginia, Maryland, Pennsylvania, and West Virginia. Keystone hired Freire in part

to provide Spanish translation services, and also to help her supervisor, Beckie Cole ("Cole"), prepare out-of-state closing files. She also worked at the reception desk and on insurance policies. (Doc. No. 33. ¶ 6.) Her services as a translator were never needed, however. Keystone was not initially satisfied with Freire's performance, as she made a number of mistakes, but she improved over time and performed at the level of an average employee.

Keystone reprimanded Freire with a verbal and written warning for "excessive personal phone calls, her unexcused non-emergency absence, and her work errors." (Doc. No. 27 at 6.) In February 2006, Freire informed Cole that she was pregnant, and in the following months took much unscheduled leave to attend doctor's appointments for herself and her children. In May 2006, Cole met with Freire to again reprimand her for taking excessive unscheduled leave in the middle of the day. Also, beginning in February 2006, Joshua Parish, a settlement attorney who worked for Keystone, made various offensive comments of a sexual nature to Freire. These nine lascivious comments mostly pertained to Freire's appearance or the mechanics of how she had become pregnant. For example, Joshua, on two different occasions, commented: " I need a woman like Priscilla hot [sic] and that loves to have sex." (Doc. 27 at 12.)

In June 2006, a Keystone employee left with seven other employees to work for a competitor firm in Maryland, thereby taking away business from Keystone. In a letter dated July 25, 2006, Keystone laid off Freire and one other employee, Beth Easterday, based on Cole's decision to do so as there was no longer sufficient work for them. Cole personally took over Freire's assignments, which she had previously overseen.

Freire filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on national origin and pregnancy and on August 7, 2008 received a right to sue letter from the EEOC. On November 7, 2008, she filed the instant

Complaint in this Court alleging sexual harassment, and employment discrimination on the basis of national origin and pregnancy, in violation of Title VII. On August 3, 2009, Keystone moved for summary judgment on her claims.

### I.      STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

Complaints filed by *pro se* plaintiffs are "to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

## II.     ANALYSIS

Defendant argues that Plaintiff's claims should be dismissed because they are all brought under Title VII, and Title VII does not apply to Keystone because it had fewer than fifteen employees, or alternatively because this court lacks subject matter jurisdiction over Plaintiff's sexual harassment claims because she did not file those claims with the EEOC, or alternatively because she cannot establish either "quid pro quo" or "hostile work environment" harassment. Defendant also argues that Freire's national origin and pregnancy discrimination claims fail because Freire did not suffer an adverse employment action because her position was eliminated upon her layoff, and thus she cannot make out a prima facie case of discrimination. The Court agrees with Defendant on all of these issues.

### i.       Applicability of Title VII

Title VII applies to each employer "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). "Title VII defines 'employee,' with certain exceptions not relevant here, as 'an individual employed by an employer.' 42 U.S.C. § 2000e(f). 'In adopting this circular definition, Congress has left the term 'employee' essentially undefined insofar as an employee is to be distinguished from an independent contractor.'" *Francis v. Town of Brookneal*, No. 06-0025, 2007 U.S. Dist. LEXIS 36608, *7-8 (W.D. Va. May 18, 2007) (citation omitted). Independent contractors do not qualify as full time employees for the purposes of meeting this minimum number of employees. *See id.* "'[T]he degree of control exercised by the employer over the alleged employee is the 'critical question.' . . . The less an employer oversees 'the actual rendering of [the person's] services,' the less likely it will be that

the person is an employee." *Francis v. Town of Brookneal*, 2007 U.S. Dist. LEXIS 36608, *7-8 (W.D. Va. May 18, 2007) (citations omitted).

Where an employee claims that Title VII is applicable to an employer with less than fifteen employees because the employer is integrated with another employer with sufficient employees, this Court applies a four-part test to determine whether two entities are an integrated enterprise for purposes of Title VII coverage. "Under the 'integrated employer test,' the court considers the existence of four factors between the parent and its subsidiary: (1) common management; (2) the interrelation between operations; (3) centralized control; and (4) the degree of common ownership and financial control.'" *Glunt v. GES Exposition Servs.*, 123 F. Supp. 2d 847, 874 (D. Md. 2000) (citing *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999)).

> In applying the integrated enterprise test, courts have noted the following to be probative evidence that one company employs the other's employees for purposes of Title VII liability: (1) one company's employees hired and fired the other's employees and/or authorized lay offs, recalls, and promotions of such employees; (2) one company routinely transferred employees between it and the other company, used the same work force, and/or handled the other's payroll, (3) one company exercises more than general oversight of the other's operations by supervising the other's daily operations, such as production, distribution, purchasing, marketing, advertising, and accounts receivable, (4) the companies have common management in the form of interlocking boards of directors and/or common officers and managers, (5) the companies fail to observe basic formalities like keeping separate books and holding separate shareholder and board meetings, (6) the companies fail to maintain separate bank accounts, and (7) the companies file joint tax returns.

*Glunt v. GES Exposition Servs.*, 123 F. Supp. 2d 847, 874 (D. Md. 2000) (citing *Thomas v. BET Sound-Stage Restaurant/Brettco, Inc.*, 61 F. Supp. 2d 448, 456 (D. Md. 1999) (citations omitted)). Courts applying the integrated enterprise test have found the third factor, centralized control of labor relations, to predominate. *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999).

Here, Keystone demonstrates that before integration with DRB, it employed fewer than fifteen employees. To reach the necessary threshold allegation that Keystone employed fifteen employees, Freire includes as an employee, Ms. Ann Ferguson. The record demonstrates that Ms. Ferguson was in fact an independent contractor. She had her own independent law practice which serviced other clients, was paid by Keystone on a per document basis, and Keystone did not withhold taxes from her paycheck, cover her under workers' compensation, or control or supervise her work. Freire also includes as an employee Brianne Paugh, who, as an intern worked for less than 20 weeks, and thus also does not qualify as an employee under Title VII. Thus Freire has failed to show that Keystone alone employed the fifteen employees requisite to triggering Title VII coverage.

Keystone acknowledges that during the course of Freire's employment, Keystone became a subsidiary of Dan Ryan Builders Enterprises ("DRB"), which, combined with Keystone, easily employs over fifteen people, but argues that even so, Keystone cannot be considered part of DRB for purposes of Title VII coverage. (Doc. No. 27 at 10.) In an affidavit, Cole, Office Manager of Keystone during Freire's employment, states that even with their integration, Keystone and DRB did not share payroll, health insurance, life insurance, a human resources department, office space, managers, personnel, equipment, storage space, uniforms, phone numbers, or a website. (Doc. No. 27. Ex. 1.) Moreover, "no employees were shared between the companies, and they did not share company handbooks." (Doc. No. 27 at 10.) Defendant also notes Freire had never met, and was not familiar with the name of Jodie Brinton, DRB's Director of Human Resources. (Doc. No. 41 at 4.) Defendant argues that DRB and Keystone's affiliation fell short of the "integration" required under Title VII analysis as none of the key components of integration were satisfied.

The Court finds Freire's evidence insufficient to counter Keystone's evidence that Keystone and DRB were not integrated. Even where one company is an affiliate of another company, there is no immediate assumption of integration. With hearsay issues aside, Plaintiffs' documents that show that Keystone and DRB are affiliated are insufficient to show they are integrated. Thus, Plaintiff's webpage printout (Doc. 33, Ex. C), and the email exchange in which Keystone responded to a customer request for contact information (Doc. 33, Ex. B), do not show integration of Keystone and DRB. The statement of the EEOC investigator that it has jurisdiction is irrelevant to this inquiry as the EEOC's determination on this issue does not control this Court's determination (Doc. 33, Ex. D). Cole's affidavit that she filled her LinkedIn.com profile in 2007, and that she wrote "DRB" by mistake, takes away any evidentiary value the profile print-out offered in determining the relationship between Keystone and DRB in 2005 and 2006. The most compelling evidence Freire offers is the termination letter she received from DRB (Doc. 33, Ex. A), and the letter from DRB explaining how much she would receive in her paycheck upon her termination. Defendant contends this evidence is inadmissible because it is unauthenticated hearsay. It also contends that Cole's affidavit that the two companies did not have integrated payroll or human resources departments counters this evidence, if it were admissible. The Court agrees that if the letters were admissible, Cole's affidavit erases any fact of material dispute regarding whether Keystone was an integrated enterprise with DRB at the time of Freire's termination. The letter, on DRB stationary, notifying plaintiff of her termination, could give rise to an inference that DRB was involved in Keystone's human resources department. But, because the Keystone Office Manager has flatly refuted this proposition by affidavit, and because Plaintiff has offered no affidavits explaining the letters or authenticating them, the Court does not find they create a genuine dispute of material fact. Because Freire has

not presented a genuine dispute with regard to whether Keystone had fifteen employees during Freire's employment, Freire cannot survive Keystone's motion for summary judgment.

Even if the Court had found Keystone and DRB to be integrated, the case would not survive summary judgment. The Court will briefly address the alternative grounds for granting summary judgment in this case.

### ii.     Sexual Harassment

To bring a sexual harassment claim in this Court under Title VII, a plaintiff must first exhaust administrative remedies by filing a charge with the EEOC. *See* 42 U.S.C.A. § 2000e-5(f)(1). "'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'" *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). Thus, generally, if the EEOC charge alleged only discrimination on the basis of race, the formal litigation claim cannot address discrimination on another separate basis. *See id.* "Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

Here, Plaintiff brought EEOC charges on the basis of national origin and pregnancy discrimination, and did not mention sexual harassment. Nor do the facts of her EEOC charge give rise to a sexual harassment claim. Plaintiff's attorney apparently intended to file a sexual harassment charge, as he indicated in a letter he wrote the EEOC four months after Plaintiff filed her charge. But, as Plaintiff has not shown evidence that she actually filed an EEOC charge alleging sexual harassment, this Court lacks subject matter over this claim.

Finally, even if this Court had subject matter jurisdiction over this claim, Plaintiff's claim would fail. The harassment she alleges does not meet the threshold standard of either quid pro quo sexual harassment or hostile work environment sexual harassment.

> Although quid pro quo and hostile environment sexual harassment claims both arise under Title VII, each type of claim requires proof of an element that the other does not. To wit, to establish quid pro quo liability, a plaintiff must prove "that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands." In contrast, to establish a hostile environment claim, the plaintiff must prove that the objectionable conduct was "severe or pervasive."

*Moser v. MCC Outdoor, L.L.C.*, 256 Fed. Appx. 634, 642 (4th Cir. 2007). Thus, to make a quid pro quo sexual harassment claim, a plaintiff must show she was promised a favor or threatened, based on her acceptance or rejection of a sexual advance. Freire has not made any such allegation in this case. Thus Freire does not make out a quid pro quo sexual harassment claim.

To make a prima facie case of sexual harassment based on an abusive or hostile work environment, a plaintiff must show that "(1) that she was harassed because of her sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." *Sraver v. Surgical Monitoring Servs.*, No. 05-1331, 2006 U.S. Dist. LEXIS 55222, *10 (D. Md. July 27, 2006). To determine whether the plaintiff made a sufficient showing of abusive work environment, the Court considers "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work environment.'" *Sraver*, 2006 U.S. Dist. LEXIS 55222, *10. Inappropriate and cruel comments often do not alone create an abusive environment. Indeed, "sporadic use of abusive language," and "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Sraver*, 2006 U.S. Dist. LEXIS 55222, *13-14. The comments in this case, based

on remarks by Joshua Parish, a settlement attorney who worked for Keystone, fall into the category of "sporadic use of abusive language" that does not make a hostile work environment. These comments included Josiah whispering into plaintiff's ear, "you look hot and sexy," seven remarks relating to Freire's pregnancy such as, "I need a woman like Priscilla hot [sic] and that loves to have sex" and on one occasion hugging Freire and whispering "those fill [sic] nice (my breast) [sic]." (Doc. No. 27.) Courts in this Circuit have granted summary judgment to employers based on similar conduct. *See Sraver*, 2006 U.S. Dist. LEXIS 55222, *2 (granting summary judgment on the ground that very similar comments regarding plaintiff's sex life, such as "'Good morning/good afternoon, Carole, did you get laid last night?' or 'How's the sex life?'" made on a regular basis, did not create an abusive work environment). Nor has Plaintiff alleged any unreasonable interference with her work stemming from these comments. Thus, Freire's allegations fall short of a prima facie case for a hostile work environment sexual harassment claim.

### iii. Title VII National Origin Discrimination and Gender Discrimination

Plaintiff relies on the *McDonnell Douglas* burden-shifting framework to establish her discrimination claim. Under the first step of the *McDonnell Douglas* framework, plaintiff can establish a prima facie case of prohibited discrimination "by showing that (1) [s]he is a member of a protected class, (2) [s]he suffered an adverse employment action (such as discharge), (3) [s]he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action, and (4) [her] position remained open or was filled by a similarly qualified applicant outside the protected class." *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006). Plaintiff alleges the termination of her employment was an adverse employment action, but cannot show that her position remained open or was filled by a similarly qualified

applicant outside the protected class because her position was, in fact, eliminated. (Doc. No. 27 at 15.) Defendant has shown Freire's position was eliminated and that Cole herself completed the duties that Freire had previously handled, but which Cole had always overseen. Because the position was eliminated, Freire cannot make out a prima facie case of prohibited discrimination under the *McDonnel Douglas* framework based on her termination.

Plaintiff also alleges discrimination based on various other actions by Keystone to which she objects, but which fall short of the legal requirement for "adverse employment action." To constitute an "adverse employment action" for the purposes of discrimination under Title VII, an act must effect "'ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensating.' There are 'many interlocutory or mediate decisions' which have no immediate effect upon employment conditions and which were not intended to fall within the proscriptions of Title VII." *Nichols v. Caroline County Bd. of Educ.*, 123 F. Supp. 2d 320, 325 (D. Md. 2000) (citing *Page v. Bolger*, 645 F.2d 227 (4th Cir. 1981)). The adverse employment actions plaintiff alleges, aside from termination, fall into the category of interlocutory decisions which do not effect the ultimate terms of employment. Not being allowed to take personal phone calls at work, not receiving an invitation to the realtor Christmas party, having to reschedule appointments, and being denied one thirty-minute lunch break do not rise to the level of ultimate employment decisions. Therefore Plaintiff cannot make out a prima facie case of employment discrimination based on any of these actions.

### iv.     Motion to Compel Settlement Conference

Defendant has opposed Plaintiff's Motion to Compel a Settlement Conference and Plaintiff has not presented a convincing basis for the Court to compel a settlement conference between the parties. Moreover, in light of the Court's above ruling, any settlement discussions

are of no moment in this case. Accordingly, the Motion to Compel Settlement Conference will be denied.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion to Compel Settlement Conference.  A separate Order will follow.

|  |  |
|---|---|
| December 29, 2009 | /s/ |
| Date | Alexander Williams, Jr. |
|  | United States District Judge |